# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HAFLEY, *et al.*, on behalf of themselves and others similarly-situated, | : | Case No. 1:21-cv-203 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| AMTEL, LLC., | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS (Doc. 7); GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND CLASS NOTICE (Doc. 16); AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND (Doc. 25)

This civil action is before the Court on Defendant's motion to dismiss for lack of jurisdiction (Doc. 7) and the parties' responsive memoranda (Docs. 18 and 21) and Plaintiffs' motion for conditional certification and Court-authorized notice to a proposed Fair Labor Standards Act ("FLSA") collective action (Doc. 16) and the parties' responsive memoranda (Docs. 24 and 27). Also before the Court are Defendant's motion to stay the case pending resolution of the motion to dismiss (Doc. 17) and the parties' responsive memoranda (Docs. 20 and 22); and Defendant's motion to file an amended answer (Doc. 25) and the parties' responsive memoranda (Docs. 28 and 30).

## I. BACKGROUND

Plaintiffs Michael Hafley and Christopher McCaw bring this action under the FLSA and related state laws, on behalf of a putative class of similarly situated individuals seeking all relief available under the FLSA, including unpaid wages, overtime wages,

liquidated damages, attorney's fees and other damages. (Doc. 1). Plaintiff Hafley, an Ohio resident, brings this case on behalf of himself and similarly situated Ohio employees. (*Id.* at ¶3). Plaintiff McCaw brings this action on behalf of himself and similarly situated Kentucky employees. (*Id.* at ¶4). Plaintiff McCaw has worked for Amtel in both Ohio and Kentucky. (*Id.* at ¶¶6-5). Plaintiff Hafley worked for Amtel in Ohio only. (*Id.* at ¶2).

Defendant Amtel, LLC ("Amtel") is a large retailer of mobile devices (*id.* at ¶¶8-9) and an enterprise as defined by the FLSA. (*Id.* at ¶15). Plaintiffs worked for Amtel as store managers. ("SMs"). (*Id.* at PageID# 2). Amtel maintained control and oversight over the SMs. (*Id.* at ¶12). Plaintiffs allege Amtel apply the same employment policies to all SMs nationwide and issued paychecks to all SMs. (*Id.* at ¶¶ 13, 16, 18).

Specifically, Plaintiffs allege Amtel failed to keep accurate time for SMs, misclassified SMs as exempt, and did not pay overtime. (*Id.* at ¶31).

In support of the case as a class vehicle, Plaintiffs allege that SMs had similar duties, those duties did not include independent discretion, and customer service occupied the majority of their working hours. (*Id.* at ¶¶ 68-72). For these reasons, Plaintiffs further assert that Amtel wrongly classifies all SMs as exempt from overtime pursuant to the FLSA. (*Id.* at ¶74). Plaintiffs support their motion for conditional certification by submitting declarations from five SMs (two who worked in Ohio only; two who worked in Ohio and Kentucky; and one who worked in New York) (Docs. 16-2, 16-3, 16-4, 16-5, 16-6) and job descriptions from several SM job postings (Doc. 16-7).

Defendant Amtel has moved for a partial dismissal on the basis that SMs who

either do not live in Ohio or who have not worked for Amtel in Ohio may not be part of the class. (Doc. 7). The Court turns to that motion first.

## II. MOTION TO DISMISS

### A. Standard

The plaintiff bears the burden of establishing personal jurisdiction. *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989). When deciding whether personal jurisdiction exists, a court has discretion to hold a hearing or to rely on the affidavits and factual allegations in the pleadings. *Id.*

Plaintiffs "need only make a *prima facie* showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Nevertheless, if the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise[,] ... specific facts showing that the court has jurisdiction." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). In ruling on a 12(b)(2) motion, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Neogen*, 282 F.3d at 887. A court must construe the facts presented in the pleadings and affidavits in the light most favorable to the nonmoving party. *See Serras*, 875 F.2d at 1214.

To exert personal jurisdiction over a non-resident defendant, the forum's long-arm statute must be satisfied <u>and</u> the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice under the Due Process Clause. *See Tharo Sys., Inc. v. cab Produkttechnik GmbH & Co. KG*, 196 Fed. App'x 366, 369 (6th Cir. 2006)

3

(quoting *Neogen*, 282 F.3d at 888). "Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against the defendant in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445–47 (1952)).

### B. Analysis

Amtel has moved for partial dismissal based on a lack of jurisdiction. (Doc. 7). Amtel argues that potential non-Ohio opt-in plaintiffs—plaintiffs who neither live in nor worked for Amtel in Ohio—cannot assert specific or general jurisdiction over Amtel. Plaintiffs make several arguments in response, only one of which the Court needs to address to resolve the motion. Plaintiffs argue the motion is unripe for adjudication, and the Court agrees.

As of this moment, only the two named Plaintiffs have active claims against Amtel relating to their employment with Amtel. Both these worked as SMs for Amtel in Ohio. On the other hand, putative opt-in plaintiffs are, at this point, theoretical. Any opinion of this Court as to those theoretical opt-ins would be advisory. The Court thus finds the partial motion to dismiss is not yet ripe.

While the Court acknowledges a variety of approaches to this same question, it finds the opinion of its sister Court in *Knecht v. C & W Facility* most persuasive:

4

> Defendants generally cannot preemptively prevent a party from joining a suit due to lack of jurisdiction; they must wait until the party attempts to join, then move for dismissal. This approach is especially justified where, as here, the only opt-in plaintiff who will remain after this Opinion and Order also worked in Ohio, and it is unclear whether any out-of-state opt-ins will even join the suit.
>
> 534 F. Supp. 3d 870, 876 (S.D. Ohio 2021)

Here, too, the Court has no idea who would opt into this litigation if the Court conditionally certified the class. It is also unclear, for now, what notice will or will not be authorized. These are further reasons to hold off on answering the legal issues put forth by Amtel's motion.

Amtel argues that "Plaintiffs cannot credibly speculate that their motion for nationwide conditional certification will not yield any non-Ohio residents who opt into this suit." (Doc. 21 at PageID# 295). Of course, the question of who may or may not receive notice and join the lawsuit is not completely up to Plaintiffs. More importantly, even the absolute certainty that out-of-state parties *will* join the suit does not put those parties before the Court now. Amtel's motion will be denied because it is premature.

That said, the Court takes notice of *Canaday v. Anthem*, handed down by the Sixth Circuit after briefing on this motion closed. *See* 9 F.4th 392, 394 (6th Cir. 2021); (*see also* Notice of Supplemental Authority, Doc. 31). In that case, the Sixth Circuit essentially adopted Amtel's position that out-of-state FLSA plaintiffs cannot assert specific jurisdiction against their employers for work performed out of state. *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 394 (6th Cir. 2021). While this does not change the ripeness issue, it may well inform whether putative out-of-state opt-in plaintiffs are

"similarly situated" to named Plaintiffs, both of whom worked for Amtel in Ohio. The Court will revisit *Canaday* in reviewing the motion to conditionally certify a class.

The parties also brief the question of whether Ohio courts, like this one, can asset general jurisdiction over Amtel. Accordingly, the Court will provide an answer.[1]

Courts may exercise general jurisdiction against a corporation in a place where "the corporation is fairly regarded at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's state of incorporation and principal place of business." *Maclin v. Reliable Reps. of Texas, Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) (citing *Goodyear* at 924 (2011)). Courts have recognized the possibility of general jurisdiction outside of these paradigm forums in "exceptional cases"—specifically, when a corporate defendant has "operations in a forum other than its formal place of incorporation or principal place of business [that] may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). However, maintaining extensive operations within a state alone does not satisfy this exception. *See Maclin,* 314 F. Supp. 3d at 849.

Plaintiffs argue general jurisdiction over Amtel is warranted because Amtel "systematically conducted business in this state over at least the last three years by operating stores in Ohio …." (Doc. 18 at PageID #271). Plaintiffs align the current case with *LSI Indus. Inc. v. Hubbell Lighting, Inc*, a case which essentially concluded:

---

[1] Because the named Plaintiffs, the only plaintiffs now in the suit, do not require general jurisdiction, what follows is arguably dicta.

> The district court in the case at issue noted that Hubbell did not mount a significant challenge to the court's exercise of jurisdiction pursuant to the Due Process Clause. The court further recognized that LSI has ably demonstrated that the [c]ourt may properly exercise general jurisdiction over [Hubbell], inasmuch as [Hubbell] has had a significant amount of contacts with Ohio. We agree. Based on Hubbell's millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains continuous and systematic contacts with Ohio.

232 F.3d 1369, 1375 (Fed. Cir. 2000) (internal citations and quotations omitted).[2]

Plaintiffs do not claim Amtel has either incorporated in Ohio or maintains a principal place of business in Ohio. The question, then, is whether Amtel's contacts with Ohio constitute cause for making it an "exceptional case."

The Court finds a retail presence, along with attendant hiring of personnel, does not constitute an exceptional case. A few reasons compel this conclusion. First, in *Daimler v. Bauman*, the court says the paradigm corporate "homes," the place of incorporation and the principal place of business, "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." 571 U.S. 117, 137 (2014). This reasoning counsels against finding that a retailer is "at home" anywhere it has stores.

Moreover, as pointed out by the Court in *Maclin*, the Supreme Court has recently held that hiring 2,000 employees and maintaining 2,000 mile of railroad tracks in Montana did not suffice to avail the corporate defendant of that state's general jurisdiction. *Maclin*, F. Supp. 3d at 849 (N.D. Ohio 2018) (citing *BNSF Ry. Co. v.*

---

[2] LSI originates in Ohio but ends up in the Federal Circuit because it involves a patent. *See* 232 F.3d at 1371 (Fed. Cir. 2000).

*Tyrrell,* 137 S. Ct. 1549, 1559 (2017)). Moreover, "the inquiry [into general jurisdiction] calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF*, 137 S. Ct. 1549, 1559 (2017) (internal quotations and citations omitted). With these points in mind, the Court will not find it has general jurisdiction over Amtel in Ohio based solely on Amtel's retail footprint.

Yes, the Federal Circuit's decision in *LSI*—finding general jurisdiction is established over a corporation because of its in-forum sales and distributor network— provides some marginal support for Plaintiffs. But, as illuminated above, several cases since *LSI*, many of which constitute binding authority on this Court, have clarified that general jurisdiction is for the most part limited to the places where a corporate defendant is incorporated or where it has its principal place of business. Exceptions exist, but they are not present in this case. Accordingly, the Court finds it does not have general jurisdiction over Amtel.

### C. Conclusion

Taking all this into consideration, the Court makes the following observations and conclusions. Amtel cannot overcome its ripeness problem, so the motion to dismiss will be denied. However, there is no justification for certifying a class that includes several plaintiffs who cannot claim specific jurisdiction over Amtel in Ohio based on the Sixth Circuit's decision in *Canaday*. And, as noted, general jurisdiction over Amtel in this forum is not well founded. The Court will keep this in mind when analyzing Plaintiff's motion to conditionally certify a class and for Court-approved notice.

## III.  MOTION FOR CONDITIONAL CERTIFICATION AND FOR COURT AUTHORIZED NOTICE[3]

### A. Standard

The FLSA allows employees, under certain circumstances, to collectively sue an employer to recover unpaid minimum wages and overtime compensation. *See* 29 U.S.C. § 216(b).  In relevant part, the statute provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Accordingly, 29 U.S.C. § 216(b) establishes two requirements for a collective action: (1) the plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

The Sixth Circuit has implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Hughes*, 2015 WL

---

[3] Plaintiffs style their motion as one for "court-authorized" notice. The contents of the memorandum in support make clear that Plaintiffs also seek "conditional certification"—a prerequisite for approval of notice. *See Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14–cv–432, 2015 WL 4112312, at *2, 2015 (S.D. Ohio July 7, 2015).  The Court will naturally analyze both, first looking to the question of whether conditional certification is appropriate.

4112312, at *2 (citing *In re HCR ManorCare, Inc.*, No. 11-3866, 2011 WL 7461073, at

*1 (6th Cir. Sept. 28, 2011)).  At the first stage, the court must determine whether to

conditionally certify the collective class and whether notice of the lawsuit should be

given to putative class members.  *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D.

Ohio 2011).  At the second stage, the defendant may file a motion to decertify the class if

appropriate to do so based on the individualized nature of the plaintiffs' claims.  *Id.*

    When considering a motion for conditional certification, the court does not

consider the merits of the claims, resolve factual disputes, or analyze credibility.

*Swigart*, 276 F.R.D. at 214.  Doing so would "intrude improperly into the merits of the

action." *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2011 WL 6149842, at *3 (S.D. Ohio

Dec. 9, 2011) (quoting *Murton v. Measurecomp LLC*, No. 1:07-CV-3127, 2008 WL

5725631, at *5 (N.D. Ohio June 9, 2008)); *see also Hamm*, 275 F. Supp. 3d 863, 869

(S.D. Ohio 2017) ("The Court does not weigh evidence or evaluate the merits of the

parties' claims at the conditional certification stage.").

## B.  Analysis

    The FLSA does not define the term "similarly situated."  However, the Sixth

Circuit has found that employees are similarly situated if they "suffer from a single[]

FLSA-violating policy," or if their claims are "unified by common theories of

defendants' statutory violations, even if the proofs of these theories are inevitably

individualized and distinct." *Ford v. Carnegie Mgmt. Servs.*, No. 2:16-CV-18, 2016 WL

2729700, at *2 (S.D. Ohio May 11, 2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*,

575 F.3d 567, 585 (6th Cir. 2009)).

At the first stage of the similarly situated analysis (the stage at issue here), a plaintiff must only make a "modest showing" that he/she is "similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).  This standard is "fairly lenient" and "typically results in conditional certification." *Id.* (quoting *Comer*, 454 F.3d at 547).  Ultimately, the issue of whether to grant conditional certification is within the district court's discretion. *Comer*, 454 F.3d at 546.

For reasons discussed below, the Court is satisfied that the putative class is similarly situated in terms of employment duties.  However, the *Canady* decision has altered the landscape and would seemingly raise a jurisdictional bar to putative opt-in Plaintiffs who did not work for Amtel in Ohio. Thus, the Court addresses the *Canaday* problem first. The Court will then undertake the "similarly-situated" analysis.

### 1. *Canaday and the impossibility of a nationwide collective*

Plaintiffs seek a nationwide class of SMs.  C*anaday* is unequivocally a problem for the nationwide class—indeed, for any SMs who did not work for Amtel in Ohio.  The court there holds "[w]here, as here, nonresident plaintiffs opt into a putative collective action under the FLSA, a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum State." *Canaday*, 9 F.4th 392, 397 (6th Cir. 2021).  Moreover, as noted, this Court has found it does not have general jurisdiction over Amtel. The overwhelming conclusion is that non-resident SMs whose claims against Amtel arise out of conduct outside Ohio cannot maintain FLSA claims before this Court.

Plaintiffs seem to recognize the problem but nonetheless argue that nationwide notice is appropriate. In a notice of supplemental authority regarding a First Circuit case, Plaintiffs state, "[e]ven if certain individuals ultimately must pursue their claims in other forums, they still have a significant interest in learning of their claims and protecting those claims against the expiration of their rights." (Doc. 33 at PageID# 514).

While the Court is sympathetic to the reasoning, the explicit purpose of notice in an FLSA case is to alert plaintiffs who have rights in the existing case, so that they may join it. That is why notice only goes to "putative class members." *Swigart*, 276 F.R.D. 210, 213 (S.D. Ohio 2011). Moreover, Plaintiffs' approach would seemingly lead to confusion. Several non-Ohio SMs could opt in only to be told, at some later time, they must pursue their claims in their home states or in Amtel's home forum. Plaintiffs' proposal to send nationwide notice despite the jurisdictional issues simply does not add up.

To look at this another way, post-*Canaday*, SMs who worked for Amtel outside of Ohio are situated differently than Ohio-based SMs for a simple reason: this court lacks the specific jurisdiction over the claims of SMs who did not work for Amtel in Ohio. For this reason, at this time, the Court will not conditionally certify or authorize notice to any SMs whose claims against Amtel arise out of conduct that took place outside of the forum state. Thus, the Court will only analyze conditional certification and notice for a class of SMs who worked for Amtel in Ohio.

## 2. *Conditional certification of SMs who worked for Amtel in Ohio.*

Even limited to the Ohio-based evidence, Plaintiffs have made a sufficient showing that Ohio SMs are similarly situated. It is beyond question that all SMs are classified as non-exempt.[4] The declarations tend to show that SMs have a managerial job description but in practice perform duties more closely aligned with hourly staff. (*See e.g.*, Doc. 16-4 at ¶¶10-12). SMs, based on the declarations, get paid similarly and routinely work over 40 hours a week. (*See e.g.*, Doc. 16-2 at ¶¶5, 6). The declarant SMs also state they do not get paid overtime. (*Id.* at 4).

The declaring SMs all attest to the fact that their District Managers performed most supervisory tasks like hiring, firing, promoting and setting pay. (*See e.g.*, Doc. 16-5 at ¶¶15-16). Ohio-based SMs also declare that any discretion they had was further curtailed by corporate directives. (*Id.* at ¶14; Doc. 16-2 at ¶13).

Moreover, while the record consists of declarations from only four Ohio-based SMs, there is reason to believe the similarities run broadly. Declarant SMs state their job duties brought them into contact with other SMs, all of whom spent most of their time on non-supervisory, non-discretionary tasks. (Docs. 16-3 at ¶21; 16-4 at ¶¶20-21). Narrowing the relevant scope to Ohio, the Court finds this is more than sufficient to establish that Ohio SMs are similarly situated.

In opposition, Amtel first complains about the state of FLSA jurisprudence.[5] Its

---

[4] Except possibly in California, where Amtel alleges the SMs are paid hourly. (Doc. 24 at 10). Of course, this is now a moot point.

[5] From Amtel's, opposition:

chief grievance is that the two-step procedure is toothless and, as a result, courts apply too little scrutiny to the question of conditional certification. (Doc. 24 at 6). Amtel, accordingly, urges this Court to carve a new path, or at least to trace the steps of a Fifth Circuit case, and reject the two-step certification process. (*Id.* (citing *Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430, 434 (5th Cir. 2021)). While appreciative of the analysis, the Court politely declines the invitation to reinvent FLSA law in the Sixth Circuit.[6]

Amtel also attempts to use arbitrability as a wedge. (Doc. 24 at 10). Amtel relates, with reference to a declaration of an Amtel executive, that some SMs have signed arbitration agreements. (*Id.*). Even if this is true, the Court agrees with Plaintiffs that the more prudent approach is to defer the question of arbitrability until the allegedly arbitration-bound plaintiffs have opted in. *See Bradford v. Team Pizza, Inc.*, No. 20 Civ. 60, 2020 WL 3496150, at *5 (S.D. Ohio June 29, 2020), *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 735 (S.D. Ohio 2016).

The Court understands that this decision comes with consequences for the

---

Yet over time, courts have so embraced the two-step procedures that it is now routine for plaintiffs to file a generic FLSA collective action based on blanket, unsupported assertions that they are similarly situated to other individuals nationwide, and on that basis alone summarily obtain an order requiring defendants to produce a list of potential co-plaintiffs and approving an invitation for them to join the case. Any argument at all raised to refute the sufficiency of plaintiffs' filing is met with a dismissive citation ….

(Doc. 24 at 6).

[6] A District Court has approved an interlocutory appeal on the question. *See Holder v. A&L Home Care & Training Ctr.*, LLC, No. 1:20-CV-757, 2021 WL 3400654, at *12 (S.D. Ohio Aug. 4, 2021)

employer, Amtel: employees with fully valid arbitration agreements may receive the notice and opt-in. *See Taylor v. Pilot Corp.*, 697 F. App'x 854, 859 (6th Cir. 2017) (discussing the same problem). But the alternative is worse. If Amtel could simply exempt employees from FLSA notice based on its own documentation of an arbitration agreement, Amtel would essentially act as its own judge and jury as to the validity of those arbitration agreements. *See Colley* at 735. Accordingly, the Court will not exclude SMs alleged to have signed arbitration agreements.

For the reasons stated above, the Court will certify a class of SMs who worked for Amtel within Ohio during the relevant period. Because of the procedural posture of this case—with both a motion to dismiss and the Sixth Circuit's decision in *Canaday* delaying this Court's resolution of the motion to conditionally certify a class—the Court will also grant Plaintiffs' unopposed request for equitable tolling. *See Engel v. Burlington Coat Factory Direct Corp.,* No. 1:11CV759, 2013 WL 5177184, at *2 (S.D. Ohio Sept. 12, 2013); *Stickle v. SCIWestern Market Support Center, L.P.*, No. CV 08–083–PHX–MHM, 2008 WL 4446539, at 21–22 (D.Ariz. Sep.30, 2008) (equitably tolling the FLSA statute of limitations where court delayed ruling on the plaintiffs' collective action pending determination of defendant's motion to dismiss). Accordingly, opt-in plaintiffs may join the suit if they worked as SMs for Amtel in Ohio at any time from April 29, 2018, three years prior to the filing of the motion for conditional certification, to the present.

## C. Form of notice

Amtel raises three objections to the form of Plaintiffs' proposed notice and notice

procedure: (1) the documents do not inform opt-ins of their right to retain independent counsel; (2) Plaintiffs request inappropriate personal information; (3) duplicative notice is unnecessary; (4) reminder notices solicit participation; and (5) the proposed notice period is too long.

Courts may facilitate notice to putative collective class members so long as the Court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on the merits. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The Court may supervise notice so that potential plaintiffs are provided "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. at 170. The Court will address each objection in turn.

### 1. Opt-ins right to independent counsel

Amtel argues the notice should state that opt-ins have the right to retain independent counsel and that the notice improperly endorses Plaintiffs' counsel. (Doc. 24 at 14). Amtel cites to one case from the Southern District of Illinois. (*Id.* citing *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 436 (S.D. Ill. 2012))). The courts of this district do not seem to require that information as a matter of course. Amtel does not explain any unique circumstances that justify including such language. Moreover, the Court notes the proposed notice does state potential class members would "keep any rights to sue Amtel" if they do not opt into the present case. (Doc. 16-8 at PageID# 233). For these reasons, the Court does not see any problem with the fact that Plaintiffs' counsel's information is included on the notice or that the notice does not explicitly spell

16

out that putative opt-in plaintiffs could seek their own counsel. Amtel's argument here is thus unpersuasive.

### 2. Plaintiffs' request inappropriate contact information and the question of a third-party administrator

Amtel argues Plaintiffs have requested inappropriate information of putative class members. Amtel specifically argues that "Plaintiffs fail to justify their request for telephone numbers, email addresses, or partial social security numbers of putative class members." (Doc. 24 at 15).

Here, the Court "must balance two competing interests: safeguarding the interests of individuals not currently a party to this case and ensuring that all potential plaintiffs receive notice of their right to join this lawsuit." *Lewis v. The Huntington Nat'l Bank*, No. C2-11-cv58, 2011 U.S. Dist. LEXIS 65068, at *5-6, 2011 WL 8960489 (S.D. Ohio June 20, 2011). "Inherent in this balance is the principle that individuals' private information, which they entrusted in their employer, shall not be disclosed except for cause." *Id.*

The Court agrees with Amtel that Plaintiffs have not shown a need for telephone or social security numbers. Plaintiffs assert that SMs trend younger, move residences more often and are primarily reachable through text. But those facts, even if true, should not relieve Plaintiffs of first attempting to reach putative class members through mail and email—and seeking other information only if those methods are unsuccessful. *See Hardesty v. Kroger Co.*, No. 1:16-CV-298, 2016 WL 3906236, at *3 (S.D. Ohio July 19, 2016).

17

On the other hand, Plaintiffs ought to receive putative class members' email addresses. As Plaintiff points out, it is the "clear trend" to provide both email and mail addresses to the named FLSA plaintiffs. *See Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018). Thus, Amtel shall provide mail and email addresses for qualifying SMs. Plaintiffs shall request more information upon a showing of need, making proper application to this Court if necessary.

From the Court's vantage, a third-party administrator is the exception rather than the norm. Amtel cites to cases from outside the Sixth Circuit without providing any context as a basis for comparison. (*See* Doc. 24 at 17). Ultimately, Amtel gives the Court no reason to believe a third-party administrator is necessary here.

### 3. *Duplicative notice*

Amtel objects to the repetitive nature of the three forms of proposed notice: mail, email, and text. (Doc. 24 at 17). The Court has already refused Plaintiffs' request to have Amtel provide phone numbers absent a showing of need from Plaintiffs. So, for now, text-message notice is off the table.

This Court has indeed found, in earlier cases, that a single form of notice is sufficient—and that email addresses are to be provided only for former employees. *See Swigart*, 276 F.R.D. at 215 (S.D. Ohio 2011). Here, though, the Court sees potential upside and no real prejudice to allowing notice by both mail <u>and</u> email. Plaintiffs assert SMs are younger and more transitory. For that reason, their email addresses may be more stable than their home addresses. The Court, moreover, sees little risk of prejudice or confusion in the event that putative opt-in plaintiffs receive this notice by both regular

mail and email. Presumably, this dual-notice procedure allows for a greater likelihood that the notice is received. As already noted above, notice by mail and email has become the "trend." *Hall v. U.S. Cargo & Courier Serv.*, LLC, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018). The Court sees no reason to buck that trend here.

### 4. Reminder notices

Amtel takes issue with the Plaintiffs' proposed reminder notices. (Doc. 24 at 18). Amtel's argument is that a reminder notice would come-off as a court endorsement of the litigation.

Indeed, "[m]any courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit-and

### 5. Length of notice period and a re-set for "undeliverables"

Amtel argues the notice period should be 45 days, rather than the 90 days proposed by Plaintiffs. (Doc. 24 at 18). Amtel also contends that Plaintiffs' proposal to reset the 90-day clock if a notice is returned "undeliverable" is unreasonable.

Courts approve varied opt-in periods dependent on the circumstances. *See, e.g., Hall*, 299 F. Supp. 3d at 900 (S.D. Ohio 2018) ("forty-five day opt-in period will satisfy 6676778, at *4 (S.D. Ohio Dec. 21, 2012). Here, where many potential opt-ins will presumably receive the notice by both mail and email, a reminder notice is not worth the risk of approaching that "narrow line." The Court will not authorize reminder notices. *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S.D. Ohio 2016) (approving 90-day opt-in period).

The Court has already approved notice by mail and email.  For that reason, the "undeliverable" issue will only arise if both methods prove unsuccessful. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016) ("By allowing e-mail notice to former employees now, the Court hopes to avoid the added step of having to resend notice in the event that a former employee's last known home address proves to be inaccurate.").  Email also helps assuage, in part, any pandemic related slow downs to the mail.

Using its discretion, and considering the facts of this case, the Court adopts the following resolution: the opt-in period will be 60 days.  The Court will not now approve any resetting of the notice period in the event both mail and email are undeliverable. Instead, the Court will make itself available on short notice to turnaround Plaintiffs' request, per the discussion above, for additional identifying information (like phone numbers).

### C. Conclusion

Consistent with the above, the Court grants conditional certification to SMs who worked in Ohio for Amtel during the relevant period.  Because the Court has required previous amendments, undue prejudice to the opposing party, and futility of amendments . . . ."  *Coe, 161 F.3d at 341.*  In the absence of any of these findings, leave should be "freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

significant changes to the proposed notice, it will also require the submission of a revised notice for approval.[7]

## IV.  MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

Pursuant to Federal Rule of Civil Procedure 15, Amtel moves for leave to file an amended answer. (Doc. 25).  Amtel wants to amend its answer to clarify or correct three related points: 1) that not all its SMs are salaried, non-exempt employees; 2) that it does not admit, as it seems to have done in its answer, that SMs are, essentially, similarly-situated; and 3) that some SMs have signed arbitration agreements. (*Id.*).  The Court will grant Amtel leave to amend because leave should be freely given and because Plaintiffs' arguments *contra* are not persuasive.

### A.  Standard

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires."  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).  Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits."  *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987).  In deciding a party's motion for leave to amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by

---

[7] Other features of the notice process produced no objections. Particularly, Plaintiffs wish to create a stand-alone website, maintained by a third-party, where opt-in plaintiffs could submit consent forms.  To leave no doubt, the Court hereby approves of such a website.

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

### B. Analysis

Plaintiffs raise three points in opposition. (Doc. 28). First, Amtel unduly delayed seeking leave to amend its answer to correct inadvertent admissions. (*Id.*). Second, Plaintiffs relied on the admissions. (*Id.*). Third, Plaintiff does not establish any evidence of "inadvertence." (*Id.*).

Amtel moved to amend its answer about two months after initially filing it. (*See* Docs. 8 and 25). It is true that motion practice took place in the intervening months and that Plaintiffs cited to the seeming admissions in their briefing. Still, the Court has before it no authority that would regard this amount of delay as "undue" under any circumstances. Plaintiffs state that intervening motion practice, wherein Plaintiffs cited to the admissions, should have put Defendant on notice of the mistakes earlier. (Doc. 28 at PageID# 459). Perhaps that is correct. Still, the Court is unwilling to find this amount of delay "undue," absent prejudice.

And, given the determinations already made by the Court in this Order, there is no real risk of prejudice. Plaintiffs argue they cited to Amtel's admissions that the SM policy is uniform in briefing its motion for certification and notice. (*Id.* at PageID ##459-60). Pursuant to Plaintiffs, this constitutes prejudice. The Court disagrees. With or without the admissions, the Court would find that Ohio-based SMs are "similarly-situated" based on evidence submitted. Amtel's amended answer will not change that.

22

Instead, Amtel's amended answer will function to (re)preserve arguments, and establish an accurate set of pleadings, for any potential motion to decertify. Since no briefing has taken place on that basis, it is fair to allow Defendant to interpose an amended answer and to make Plaintiffs deal with it.

Finally, the Court finds an analysis of what Amtel must show to prove its own "inadvertence" worthy of little time. To the Court, the gist seems to be that Amtel's counsel incorrectly typed "admit" responding to a paragraph that essentially asserts the SMs are indeed similarly-situated. The Court doubts this is anything more sinister than a mistake. Several other denials in the same, original answer are inconsistent with the notion that Amtel is welcoming the class collective with open arms. (*See, e.g.*, Doc. 8 at ¶21). Moreover, the parties did not immediately start working on an FLSA notice together. There were many signals that the issue would be contested.

## C. Conclusion

Leave to amend should be "freely given." *Coe*, 161 F.3d at 341 (6th Cir. 1998). Plaintiffs' arguments against that leave are unpersuasive. Accordingly, the Court grants Amtel's motion for leave to amend its answer.

## V. CONCLUSION

Based upon the foregoing, Defendant Amtel's partial motion to dismiss (Doc. 7) is

**DENIED**. Defendant's motion to stay (Doc. 17) pending resolution of the motion to

dismiss is **DENIED as moot.**

Plaintiffs' motion for approval of notice/conditional class certification (Doc. 16)

is **GRANTED** to a limited extent. Specifically, the Court conditionally certifies the

following class:

> All individuals employed by Amtel as exempt-classified employees at
> stores in Ohio in the job title of Store Manager at any time from April 29,
> 2018 to the present who did not receive overtime compensation for all
> hours worked over 40 in a workweek.

Within 14 days of this Order, the parties shall submit to the Court proposed

language for notification and consent, revised to be consistent with this Order, apprising

potential plaintiffs of their rights under the FLSA to opt in as parties to this litigation.

The Court will promptly act to approve the notice.

Within 21 days of this Order, Defendant will identify all putative class members

by providing a list, in electronic and importable format, of the names, addresses, and all

known e-mail addresses.

Defendant's motion for leave to file an amended answer (Doc. 25) is **GRANTED**.

Defendant shall file its amended answer forthwith.

**IT IS SO ORDERED.**

Date:   3/18/2022

Timothy S. Black
United States District Judge

24