**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

---------------------------------------------------------------------- X
                                                  :

MICHAEL HAFLEY and CHRISTOPHER MCCAW, on    **Index No.: 21-CV-203**
behalf of themselves and all others similarly situated,    :

               Plaintiffs,                         :

      -against-                                :

AMTEL, LLC,                                    :

             Defendant.                      :
---------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

    I.     Factual Allegations ...................................................................................... 1

    II.    Overview of Investigation, Litigation, and Settlement Negotiations ................... 2

SETTLEMENT TERMS .................................................................................................. 4

    I.     The Settlement Fund ................................................................................... 4

    II.    Eligible Employees ..................................................................................... 4

    III.   Notice Process............................................................................................ 4

    IV.   Settlement Awards ...................................................................................... 6

    V.    Service Payment.......................................................................................... 7

    VI.   Attorneys' Fees And Litigation Costs........................................................... 7

    VII.  Settlement Claims Administration................................................................ 8

ARGUMENT .................................................................................................................... 8

    I.     The Proposed Settlement Should Be Approved Because It Is Fair and
          Reasonable ................................................................................................. 8

          <u>1.</u>    A Bona Fide Dispute Exists Between The Parties.................................... 9

          <u>2.</u>    The FLSA Settlement is Fair and Reasonable ......................................... 10

    II.    The Notice of Settlement Adequately Informs Putative Collective Members
          of the Terms of the Settlement............................................................... 13

    III.   Service Awards Are Appropriate................................................................. 14

    IV.   An Award of Attorneys' Fees and Costs Is Appropriate ................................. 16

          1.    Plaintiffs' Request for Attorneys' Fees Is Reasonable ............................ 17

          2.    Plaintiffs' Counsel Are Entitled to Reimbursement of Costs.................. 19

    V.    The Settlement Administrator Should be Approved........................................ 20

CONCLUSION................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**CASES**                                                                                            **PAGES**

*Bailey v. AK Steel Corp.*,
  *No. 06 Civ. 468*, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008) ........................ 17

*Bailey v. Black Tie Mgmt. Co. LLC*,
  No. 2:19 Civ. 1677, 2020 U.S. Dist. LEXIS 144274 (S.D. Ohio Aug. 12, 2020) ................. 12

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................................... 19

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................................................ 18

*Bradford v. Legacy Health Servs.*,
  No. 13 Civ. 218, 2014 U.S. Dist. LEXIS 173846 (N.D. Ohio Dec. 16, 2014) ........................ 9

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
  No. 16 Civ. 516, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019) ................ 15, 16

*Carr v. Guardian Healthcare Holdings, Inc.*,
  No. 20 Civ. 6292, 2022 U.S. Dist. LEXIS 32094 (S.D. Ohio Jan. 19, 2022) ........................ 10

*Castillo v. Morales, Inc.*,
  No. 12 Civ. 650, 2015 U.S. Dist. LEXIS 192936 (S.D. Ohio Dec. 22, 2015) ................ 10, 11

*Crawford v. Lexington-Fayette Urban Cty. Gov't*,
  No. 06 Civ. 299, U.S. Dist. LEXIS 90070, at *13-14 (E.D. Ky. Oct. 23, 2008) ...............9

*Creely v. HCR ManorCare, Inc.*,
  920 F. Supp. 2d 846 (N.D. Ohio 2013) ................................................................................ 11

*Daoust v. Maru Rest., LLC*,
  No. 17 Civ. 13879, 2019 LEXIS 111222 (E.D. Mich. July 3, 2019) ..................................... 16

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ........................................................................................................ 16

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010) .................. 8, 11

*Fegley v. Higgins*,
  19 F.3d 1126 (6th Cir. 1994) ...................................................................................... 16, 17

*Gascho v. Glob. Fitness Holdings, LLC*,
  No. 11 Civ. 436, 2014 U.S. Dist. LEXIS 46846 (S.D. Ohio Apr. 4, 2014) ........................ 17

*Gentrup v. Renovo Servs., LLC, No. 07 Civ. 430*,
  2011 U.S. Dist. LEXIS 6788 ............................................................................................ 14

*Hebert v. Chesapeake Operating, Inc.,*
   No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 243405 (S.D. Ohio Nov. 7, 2019) ....... 13-14, 15, 16

*Hedglin v. Maxim Healthcare Servs., Inc.,*
   No. 15 Civ. 2614, 2016 U.S. Dist. LEXIS 148275 (N.D. Ohio Oct. 26, 2016) ...................... 9

*Hoffmann-La Roche Inc. v. Sperling,*
   493 U.S. 165 (1989) ........................................................................................... 13

*Lockhart v. D&S Residential Servs.,*
   *No. 18 Civ. 2586, U.S. Dist.* LEXIS *145321 (W.D. Tenn. Aug. 13, 2020)* ............................ *11*

*Lynn's Food Stores, Inc. v. U.S.,*
   679 F.2d 1350 (11th Cir. 1982) ......................................................................... 8, 9

*Ne. Ohio Coal. for the Homeless v. Husted,*
   831 F.3d 686 (6th Cir. 2016) ............................................................................. 18

*Neal v. Hallsons of Leb., Inc.,*
   No. 20 Civ. 00672, 2022 U.S. Dist. LEXIS 42664 (S.D. Ohio Mar. 2, 2022) ...................... 15

*Northcross v. Bd. of Educ.,*
   611 F.2d 624 (6th Cir. 1979) ............................................................................. 19

*Osman v. Grube, Inc.,*
   No. 16 Civ. 802, 2018 U.S. Dist. LEXIS 78222 (N.D. Oh. May 4, 2018) ........................... 19

*Price v. Acosta, Inc.,*
   No. 03 Civ. 2686, 2008 U.S. Dist. LEXIS 125789 (W.D. Tenn. Feb. 19, 2008) ................. 11

*Renfro v. Ind. Mich. Power Co.,*
   No. 99 Civ. 877, 2007 U.S. Dist. LEXIS 15773 (W.D. Mich. Mar. 6, 2007) ...................... 19

*Robinson v. Shelby Cnty. Bd. of Educ.,*
   566 F.3d 642 (6th Cir. 2009) ............................................................................. 13

*Rotuna v. W. Customer Mgmt. Grp., LLC,*
   No. 09 Civ. 1608, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010) .............. 8, 9, 11

*Schneider v. Goodyear Tire & Rubber Co.,*
   No. 13 Civ. 2741, 2014 U.S. Dist. LEXIS 78117 (N.D. Ohio June 9, 2014) ......................... 9

*Sharier v. Top of the Viaduct, LLC,*
   No. 16 Civ. 343, 2017 U.S. Dist. LEXIS 35584 (N.D. Ohio Mar. 13, 2017) ........................ 9

*Smith v. Local Cantina, LLC,*
   No. 20 Civ. 03064, 2022 U.S. Dist. LEXIS 73598 (S.D. Ohio Apr. 19, 2022) .............. 15-16

*Smith v. Serv. Master Corp.,*
   592 F. App'x 363 (6th Cir. 2014) ....................................................................... 16

iv

*Vassalle v. Midland Funding, LLC,*
   No. 11 Civ. 96, U.S. Dist. LEXIS 146543 (N.D. Ohio Oct. 14, 2014)............................................10

*Vasquez v. Vitamin Shoppe Industies,*
   No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011) ........................ 12

*Waggoner v. U.S. Bancorp,*
   No. 14 Civ. 1626, 2016 U.S. Dist. LEXIS 179843 (N.D. Ohio Dec. 29, 2016) .............. 14, 15

*West v. Emeritus Corp.*
   No. 15 Civ. 437, 2017 U.S. Dist. LEXIS 104269 ........................................................... 17-18

*Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,*
   No. 08 WP 65000, 2016 U.S. Dist. LEXIS 13046 (N.D. Ohio Sept. 23, 2016) .................... 17

*Williams v. Bevill,*
   No. 14 Civ. 82, 2016 U.S. Dist. LEXIS 25002 (E.D. Tenn. Feb. 8, 2016) ........................... 18

## **STATUTES**

29 U.S.C. § 216 ..................................................................................................2, 16, 17

29 U.S.C. §§ 201 .................................................................................................... 1, 2

K.R.S. §§ 337.010 et seq., ....................................................................................... 2

Ohio Revised Code §§ 4111.01 et seq. ...................................................................... 2

## **OTHER AUTHORITIES**

*Nantiya Ruan, Bringing Sense to Incentives: An Examination of Incentive Payments to Named*
   *Plaintiffs in Employment Discrimination Class Actions,*
   10 Emp. Rts. & Emp. Pol'y J. 395 (2006) .......................................................... 15

## INTRODUCTION

Subject to Court approval, Plaintiffs Michael Hafley and Christopher McCaw ("Plaintiffs"), individually and on behalf of a collective they seek to represent, and Amtel, LLC ("Amtel" or "Defendant"), have settled this wage and hour collective action for $275,000. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law, with the assistance of an experienced mediator.

Accordingly, the parties respectfully request that the Court enter the Proposed Order approving the $275,000 settlement as set forth in the Settlement Agreement and Release ("Settlement Agreement").[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Allegations

Plaintiffs allege that Amtel violated the FLSA, 29 U.S.C. §§ 201 *et seq*., by improperly classifying them and other similarly situated employees (collectively "SMs") in Ohio as exempt from federal overtime requirements and failing to pay them overtime wages. McNerney Decl. ¶ 11; ECF No. 1 (Complaint). Plaintiff Hafley worked as an overtime-exempt Store Manager for Amtel from approximately October 2015 to May 2019. McNerney Decl. ¶ 9. Plaintiff McCaw also worked as an overtime-exempt Store Manager for Amtel from approximately March 2018 to

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Christopher McNerney in Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement ("McNerney Decl."). Unless otherwise indicated, all exhibits are attached to the McNerney Decl. For the Court's convenience, a Proposed Order is attached as Exhibit 3 to the McNerney Decl.

May 2018. *Id.* ¶ 10. Amtel denies that it committed any wrongdoing or violated any federal, state, or local laws pertaining to payment of overtime wages and disputes the claims asserted in this litigation. Ex. 1 (Settlement Agreement ("Ag.")) at 1.

## II.    Overview of Investigation, Litigation, and Settlement Negotiations

Before filing this lawsuit, Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses. McNerney Decl. ¶ 13. Plaintiffs' counsel focused their investigation and legal research on the underlying merits of the Putative Collective Members' claims, the damages to which they were entitled, the legal exemptions that apply to store managers, and the likelihood of collective action certification and decertification. *Id.* Plaintiffs' counsel obtained and reviewed documents from Plaintiffs and interviewed them and other witnesses in-depth. *Id.*

Plaintiffs filed their Complaint on March 25, 2021, in the Southern District of Ohio. *See* ECF No. 1. Plaintiffs sought unpaid overtime compensation on behalf of themselves and a collective of SMs employed nationwide under the FLSA, as well as a class action under the Ohio Revised Code §§ 4111.01 *et seq.*, (the "Ohio Wage Laws") and Kentucky Wage Laws, K.R.S. §§ 337.010 *et seq.*, (the "Kentucky Wage Laws"). In response to the Complaint, Amtel filed both an Answer and a "partial" Motion to Dismiss for Lack of Jurisdiction, in which it sought to dismiss the collective FLSA claims pled on behalf of putative Opt-in Plaintiffs employed outside of Ohio on the basis that the Court lacked personal jurisdiction over Amtel with respect to the FLSA claims of out-of-state putative collective members. *See* ECF No. 7. On April 29, 2021, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice under 29 U.S.C. § 216(b) on behalf of a putative collective comprised of SMs employed by Amtel nationwide. *See* Mot. for Collective Certification, ECF No. 16. Amtel moved to stay the case

2

pending resolution of their Motion to Dismiss, and while that motion was pending, moved to amend their Answer to the Complaint. ECF Nos. 17, 25. Plaintiffs opposed that motion. ECF No. 28. On March 18, 2022, the Court denied Amtel's motion to dismiss, denied the motion to stay as moot, and granted Plaintiffs' motion for conditional certification, but limited the collective notice to individuals employed by Amtel as exempt-classified SMs at stores in Ohio from April 29, 2018, to the present. The Court also granted Amtel leave to file an amended answer. *See* ECF No. 34. On March 22, 2022, Amtel filed an amended answer. *See* ECF No. 35. On April 6, 2022, the Court approved Plaintiffs' proposed notice and consent form. *See* ECF No. 38.

Prior to the mailing of the Collective Notice, the parties renewed settlement discussions, and agreed to private mediation of their claims. McNerney Decl. ¶ 18. Accordingly, the parties requested, and the Court granted, a stay of litigation and discovery pending mediation, as well as tolling to protect the statute of limitations of SMs' claims. *See* ECF Nos. 39-42.

After agreeing to participate in mediation, the parties engaged in an informal exchange of discovery. McNerney Decl. ¶ 19. Amtel produced Plaintiffs' payroll data, which allowed Plaintiffs' counsel to construct a damages model and calculate damages for Plaintiffs and the Putative Collective Members. *Id.* In preparation for the mediation, the parties drafted mediation briefs setting forth their respective positions as to liability and damages. *Id.*

On June 14, 2022, the parties attended a mediation session with Anne Marie Estevez, Esq., an experienced and well-regarded collective action mediator. *Id.* ¶ 20. While the parties did not reach an agreement then, during the weeks that followed, they continued to negotiate to narrow their disputes, with the continued assistance of Mediator Estevez. *Id.* ¶ 20. The parties reached an agreement on the material terms of the settlement on August 11, 2021. *Id.* ¶ 21.

During the next several weeks, the parties finalized the terms of the settlement and memorialized them in the Settlement Agreement, which was fully executed on October 31, 2022.  *Id.* ¶ 21.

## SETTLEMENT TERMS

### I.    The Settlement Fund

The Settlement Agreement establishes a Maximum Gross Settlement Amount of $275,000 to settle claims against Defendant (the "Maximum Gross Settlement Amount"). McNerney Decl. ¶ 22; Ag. ¶ 1.15.  The Maximum Gross Settlement Amount covers Eligible Settlement Collective Members' settlement awards; attorneys' fees and costs and expenses; and service awards. Ag. ¶ 1.15.  The Maximum Gross Settlement Amount does not include Employer Payroll Taxes, or settlement administration, which Amtel will fund separately.  *Id.*

### II.    Eligible Employees

Eligible Collective Members are the Amtel Store Managers identified in Exhibit C to the Settlement Agreement.  McNerney Decl. ¶ 23; Ag. ¶ 1.11.  There are 38 Eligible Settlement Collective Members, including Named Plaintiffs, Opt-in Plaintiffs, and Sandeep Jaspal.[2] McNerney Decl. ¶ 23.

### III.    Notice Process

Within seven (7) days of the Court's approval of the settlement becoming final and non-appealable, Amtel shall provide the Settlement Administrator with a list, in electronic form, of the names, Last Known Addresses, Last Known E-mail Addresses, and dates each Eligible

---

[2]    While Jaspal worked for Amtel in New York, Plaintiffs filed an arbitration demand on his behalf, and the parties accordingly settled his claims in this action as well.  McNerney Decl. ¶ 24.

Settlement Collective Member worked as a salaried SM during the relevant period. ("Collective List").  McNerney Decl. ¶ 25; Ag. ¶ 2.4.

Within seven (7) days after the Settlement Administrator receives the above contact information, the Settlement Administrator will mail Settlement Notices to Putative Collective Members, via first class U.S. Mail and e-mail.  McNerney Decl. ¶ 26; Ag. ¶ 2.5.  The Settlement Notice will inform the Eligible Settlement Collective Members of their eligibility to participate in the Settlement and to receive a Settlement Check by signing and returning an enclosed Consent to Join Settlement and Claim Form, and inform them of their approximate Settlement Check amount.  *Id.*; *see also* Ex. A (Notice & Claim Form).  The Claim Form may be returned by e-mail, fax, or U.S. Mail.  McNerney Decl. ¶ 27; Ag.  ¶ 2.5.  Any Settlement Notices returned as undeliverable shall be traced one time to obtain a new address and re-mailed by First Class Mail.  Ag. ¶ 2.11.  Eligible Settlement Collective Members will have 60 days from the date of the mailing to submit their Consent to Join Settlement and Claim Forms, which must be either postmarked by, e-mailed or faxed and received on or before the 60th day after mailing ("Opt-in Period").  McNerney Decl. ¶ 27; Ag. ¶ 2.11.  The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses.  McNerney Decl. ¶ 27; Ag. ¶ 2.7.  To the extent any mailed Settlement Notice is returned as undeliverable, such person shall be permitted thirty (30) days from any re-mailing of the Notice to submit their claim form ("Re-mailing Opt-in Period").  Ag. ¶ 2.11.  The Claims Administrator will also send out reminder postcards via email and First Class United States mail thirty (30) days after the initial mailing of the Settlement Notice to any Putative Collective Member who has not returned a claim form.  Ag. ¶ 2.11. McNerney Decl. ¶ 28.

The payment of any Court-approved Service Awards and any Court-approved attorneys' fees, costs, and expenses, will be sent by Federal Express to Plaintiffs' Counsel within twenty-one (21) days after the Approval Order becomes final. McNerney Decl. ¶ 29; Ag. ¶ 3.4(A).

Within seven (7) days of the Court's approval of the last day on which any Eligible Settlement Collective Member may timely complete and submit a Consent to Join Settlement and Claim Form (the "Claim Bar Date"), the Settlement Administrator will provide notice to Defendant of the total funding amount based upon the claims received. McNerney Decl. ¶ 29; Ag. ¶ 3.4(B). Unless an appeal of the Approval Order is still pending, within fourteen (14) days after it receives notice of the total funding amount, Defendant shall deposit funds sufficient to cover all existing claims made, payroll taxes on all claims, and settlement administration costs and expenses. McNerney Decl. ¶ 29; Ag. ¶ 3.4(B). Payment to Authorized Claimants will be made within twenty-one (21) days of the close of the Opt-in Period or Re-Mailing Opt-in Period, whichever is later. The Claims Administrator will send out reminder postcards *via* e-mail and First Class U.S. Mail within sixty (60) days after the initial distribution of checks to the Authorized Claimants reminding them to negotiate their checks prior to the one hundred twenty (120) day deadline. McNerney Decl. ¶ 30; Ag. ¶ 3.4(C).

## IV.    Settlement Awards

Each Eligible Settlement Collective Member will be allocated a proportionate share of the Revised Gross Settlement Amount pursuant to an allocation formula based on the number of weeks he or she worked during the Relevant Period. McNerney Decl. ¶ 31; Ag. ¶ 3.1(B). The Settlement Claims Administrator will compute the total number of workweeks for each Potential Opt-in Plaintiff based on Amtel's business records. *Id.* To compute each Eligible Collective Member's share of the Revised Gross Settlement Amount, the Settlement Claims Administrator

will then divide the total number of workweeks worked by each Eligible Collective Member by the total number of workweeks worked by all Eligible Collective Member during the Relevant Period, and multiply that fractional amount by the amount of the Revised Gross Settlement Amount.  McNerney Decl. ¶ 32; Ag. ¶ 3.1(B).  The average Putative Collective Member's portion of the Net Settlement Fund would be approximately $1,447.37.  *Id.*  ¶ 33.

## V.     Service Payment

Under the Settlement Agreement, subject to Court approval, Named Plaintiffs Michael Hafley and Christopher McCaw along with Opt-In Plaintiffs Anthony Fambry, Alexander Hausfeld and Sandeep Jaspal (together, "Service Award Plaintiffs) request $3,000 each as a Service Payment, in recognition of the services they rendered to the Settlement Collective Members in obtaining the benefits of the settlement, as well as the risks they took in doing so. McNerney Decl. ¶ 34; Ag. ¶ 3.3(A).  Service Award Plaintiffs assisted counsel in the investigation of Settlement Collective Members' claims, helped counsel prepare for the mediation, reviewed the settlement agreement and complaint, and provided vital assistance that helped Plaintiffs' Counsel achieve this settlement for the benefit of the Settlement Collective Members.  McNerney Decl. ¶ 35.  The Service Awards and any requirements for obtaining any such payment are in addition to Service Award Plaintiffs' recovery from the Revised Gross Settlement Amount as an Eligible Settlement Collective Member.  McNerney Decl. ¶ 36; Ag. ¶ 3.3(B).

## VI.    Attorneys' Fees And Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel request $205,000 in attorneys' fees, costs, and expenses, as explained further below.  Ag. ¶ 3.2(A); McNerney Decl. ¶ 37.

## VII.     Settlement Claims Administration

As set forth in the Agreement, the Settlement Administrator will be selected by the parties.  Ag. ¶ 1.23.  McNerney Decl. ¶ 45.  Defendant will pay the Settlement Administrator's fees separate and apart from the Gross Settlement Amount.  *Id.*; Ag. ¶ 3.1(A).  The fees will cover, among other things, preparing the notice; determining the amount of payments due to Settlement Collective Members, along with the amount of all payroll tax deductions to be withheld; updating addresses for Settlement Collective Members; distributing Court-approved attorneys' fees and Service Awards; providing W-2s and 1099 forms as required under the Settlement Agreement and applicable law; establishing, controlling, and maintaining the Qualified Settlement Fund (QSF); and filing all required tax returns for the QSF and paying all taxes due.  McNerney Decl. ¶ 46; Ag. ¶ 2.2.

## ARGUMENT

## I.     The Proposed Settlement Should Be Approved Because It Is Fair and Reasonable.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  *See id.* at 1353-54; *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09 Civ. 1608, 2010 U.S. Dist. LEXIS 58912, at *15-16 (N.D. Ohio June 15, 2010).  "The existence of a question as to the plaintiffs' entitlement to compensation under the FLSA serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA."  *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *13 (N.D. Ohio Mar. 8, 2010); *see also Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *13 (emphasizing that court must

ensure that the parties are not "negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages . . . and overtime") (citations omitted).

Thus, the Court must first determine that a *bona fide* dispute existed, and then determine whether the settlement is fair and reasonable in light of the following factors: the risk of fraud or collusion (factor 1); the complexity, expense, and likely duration of the litigation (factor 2); the amount of discovery completed (factor 3); the likelihood of success on the merits (factor 4); and the public interest in settlement (factor 5). *See Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, U.S. Dist. LEXIS 90070, at *13-14 (E.D. Ky. Oct. 23, 2008); *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *13. If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved. *See Lynn's Food Stores*, 679 F.2d at 1354.

### 1. A Bona Fide Dispute Exists Between The Parties.

This litigation is the result of a bona fide dispute. As illustrated by the contested motion practice and litigation before agreement to mediation, the parties dispute nearly all aspects of Plaintiffs' claims, particularly whether SMs employed by Amtel were properly classified as exempt from overtime laws. McNerney Decl. ¶¶ 12-17. The parties' "divergent views of the facts and the law present bona fide disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury." *Bradford v. Legacy Health Servs.*, No. 13 Civ. 218, 2014 U.S. Dist. LEXIS 173846, at *7 (N.D. Ohio Dec. 16, 2014); *see also Sharier v. Top of the Viaduct, LLC*, No. 16 Civ. 343, 2017 U.S. Dist. LEXIS 35584, at *5 (N.D. Ohio Mar. 13, 2017); *Hedglin v. Maxim Healthcare Servs., Inc.*, No. 15 Civ. 2614, 2016 U.S. Dist. LEXIS 148275, at *4-5 (N.D. Ohio Oct. 26, 2016); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 U.S. Dist. LEXIS 78117, at *5-6 (N.D. Ohio June 9, 2014).

2. **The FLSA Settlement is Fair and Reasonable.**

The Court should also approve the settlement because it is fair and reasonable. As to the first factor, there is no risk of fraud of collusion. As described above, the settlement was reached after vigorous arm's-length negotiations facilitated by an experienced mediator and the exchange of information. McNerney Decl. ¶¶ 19-21. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Castillo v. Morales, Inc.*, No. 12 Civ. 650, 2015 U.S. Dist. LEXIS 192936, at *14 (S.D. Ohio Dec. 22, 2015) (quoting *Bert v. AK Steel Corp.*, No. 1:02 Civ. 467, 2008 U.S. Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008)).

The allocation of the settlement is also reasonable. It reflects a reasonable proportion of damages owed to each Settlement Collective Member based on the number of weeks they worked for Amtel as an exempt-classified Store Manager from April 28, 2018, through July 19, 2022. Ag. ¶¶ 1.21, 1.22, 3.1(B); *see Carr v. Guardian Healthcare Holdings, Inc*., No. 20 Civ. 6292, 2022 U.S. Dist. LEXIS 32094, at *6, 18 (S.D. Ohio Jan. 19, 2022) (approving allocation formula based upon weeks worked for defendant). Specifically, SMs were expected to work 45 hours per workweek. *See* ECF No. 16, Ex. 6 (job postings). Thus, this settlement ensures that SMs will recover approximately three of those five hours of overtime pay that they would be entitled to each week if they were properly classified as non-exempt (as Plaintiffs allege).

As to the second factor, this settlement is also reasonable in light of the considerable risk that Plaintiffs face. As a general matter, "complex litigation is 'notoriously difficult and unpredictable.'" *Vassalle v. Midland Funding, LLC*, No. 11 Civ. 96, U.S. Dist. LEXIS 146543, at *17 (N.D. Ohio Oct. 14, 2014) (citation omitted); *see also Castillo*, 2015 U.S. Dist. LEXIS 192936, at *15 (discussing legal and factual issues in the case that made success at trial

uncertain); *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *16.  In light of this risk, the resolution

reached by the parties – which will result in significant awards to each FLSA Collective Member

– is favorable.  *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *15; *Castillo*, 2015 U.S. Dist.

LEXIS 192936, at *15.  Moreover, "the certainty and finality that comes with settlement also

weighs in favor of a ruling approving the agreement." *Dillworth*, 2010 U.S. Dist. LEXIS 20446,

at *15.

 Although Plaintiffs believe their case is strong, it is subject to real risk, including the risk

that Plaintiffs would not succeed in maintaining a collective through trial.  Plaintiffs and

Plaintiffs' Counsel believe the weight of the evidence would show that Plaintiffs and other SMs

were similarly situated and could withstand any attempts at decertification, but Amtel would

likely argue that the differences among various stores and other individualized questions would

warrant decertification of a collective.  Plaintiffs disagree, but employers have prevailed on such

arguments.  *See, e.g.*, *Lockhart v. D&S Residential Servs., LP*, No. 18 Civ. 2586, U.S. Dist.

LEXIS 145321, at *26-27 (W.D. Tenn. Aug. 13, 2020) ("Plaintiff presents evidence of potential

FLSA violations but fails to demonstrate that each of the Opt-Ins shared a common FLSA

injury.") (citations omitted); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 856 (N.D.

Ohio 2013) (factual variations and individualized defenses favored decertification); *Price v.

Acosta*, *Inc*., No. 03 Civ. 2686, 2008 U.S. Dist. LEXIS 125789, at *70 (W.D. Tenn. Feb. 19,

2008) (differing "factual and employment settings" favored decertification).

 With respect to the third factor, the parties have not yet engaged in significant formal

discovery, but Amtel produced wage and hour data to Plaintiffs, which allowed them to calculate

damages.  In evaluating the fairness of a settlement, "the absence of formal discovery is not

unusual or problematic, so long as the parties and the court have adequate information in order to

evaluate the relative positions of the parties" including through informal discovery. *See Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19 Civ. 1677, 2020 U.S. Dist. LEXIS 144274, at *8-9 (S.D. Ohio Aug. 12, 2020) (approving settlement) (citation and internal quotation marks omitted). Here, there was informal discovery pre-mediation, that enabled Plaintiffs to assess damages and share that information with Defendant, satisfying this factor despite the fact that the parties did not produce formal discovery. McNerney Decl. ¶ 19.

As to the fourth factor, a trial on the merits would involve significant risks for Plaintiff on liability issues. Plaintiffs' misclassification claims hinge on their ability to prove that SMs performed duties that made them eligible for overtime and therefore not exempt under the overtime protections of the FLSA and Ohio law. The exempt status of retail store managers under the FLSA is highly contextual with facts pointing in both directions. For example, in *Vasquez v. Vitamin Shoppe Industies*, No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376, at *13 (S.D.N.Y. July 11, 2011), the court declined to preliminarily certify a collective of retail store managers, finding that "while the balance of work responsibilities for SMs at some retail locations may possibly support a finding of misclassification, in others the balance may tip in the opposite direction." Although Plaintiffs believe that the job functions at issue in that case are distinguishable from the jobs of Amtel's SMs, Defendant would likely argue that SMs are similar to store managers in the *Vasquez* case, warranting a similar outcome at decertification.

A trial on the merits would also involve significant risks for Plaintiff as to damages. Plaintiffs would have to prove willfulness in order to obtain a third year of liability for damages and establish that Plaintiffs each worked over 40 hours a week to recover their unpaid overtime – a risk given the absence of contemporaneous time records.

As to the fifth factor, the public interest supports approval.  The established policy in this circuit favors resolution of litigation through settlement.  *See Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) ("[I]t is . . . well-established that '[p]ublic policy strongly favors settlement of disputes without litigation'" (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007))).  Moreover, the settlement provides damages to employees, consistent with the FLSA's remedial goals.  The FLSA's legislative history reflects that Congress knew that if employees had to "file a thousand separate suits" that "[i]t just would not be done," employers "would know it would not be done," and the FLSA's remedial goals would be defeated.  *See* Fair Labor Standards Act of 1937: Hearing on S. 2475 and H.R. 7200 Before the S. Comm. On Educ. & Labor and the H. Comm. On Labor, 75th Cong. 457, 462 (1937) (statement of John M. Keating); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (the collective action process encourages "efficient resolution in one proceeding").

The settlement is favorable and provides real compensation to workers.  The settlement also conserves judicial resources by avoiding protracted litigation.  It should be approved.

## II.    The Notice of Settlement Adequately Informs Putative Collective Members of the Terms of the Settlement.

The Court should approve the proposed Notice of Settlement because it provides accurate and timely notice of the pending collective action and will allow Settlement Collective Members to make an informed decision regarding whether to participate.  *See* Ag., Ex. A (Notice).  The proposed Notice sufficiently informs Settlement Collective Members of the terms of the settlement, including the allocation formula and the scope of the release.  *See Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 243405, at *9 (S.D. Ohio Nov. 7, 2019) ("The [Proposed] Settlement Notice notifies the class members of the allocation

formula, the steps class members must follow in order to participate, the consequences of non-participation, the actual monetary amount to which they are entitled under the settlement, the effect of cashing the check, the scope of the release, the time class members have to cash their settlement checks, and the request for attorneys' fees and costs."); *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 U.S. Dist. LEXIS 6788, at *12 (approving notices that "fairly and adequately describe the terms of the Settlement including the release of claims and the form and manner of payments"). The Claim Form also is simple, straightforward, and short.

## III.    Service Awards Are Appropriate.

In addition to their *pro rata* share of the Revised Gross Settlement Amount, Service Award Plaintiffs Michael Hafley, Christopher McCaw, Anthony Fambry, Alexander Hausfeld and Sandeep Jaspal request a $3,000 service award each for their participation and assistance in the identification, investigation, and prosecution of this lawsuit. McNerney Decl. ¶ 34; Ag. ¶¶ 1.26, 3.3. Such service awards are standard in FLSA collective action settlements and are designed to reward lead plaintiffs for the time, effort, and inconvenience of consulting with counsel over the time a case was active. *See Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 U.S. Dist. LEXIS 179843, at *10 (N.D. Ohio Dec. 29, 2016) (recognizing propriety of service award where plaintiffs "'spent a significant amount of time and effort' assisting counsel . . . investigate the claims, prepare and review the complaint, respond to discovery, and prepare for mediation.").

Here, Plaintiffs' actions exemplify the very reasons courts award service payments. Plaintiffs assisted counsel in the development and prosecution of the claims by providing detailed factual information and documents. McNerney Decl. ¶ 35. Throughout the investigation, mediation, and settlement negotiations, they regularly made themselves available

to communicate with counsel. *Id.* Plaintiff Sandeep Jaspal also assisted in the preparation and review, and then filed an arbitration demand against Amtel, which provided significant additional litigation leverage (including the prospect of Amtel having to defend itself in multiple venues), and which he has agreed to withdraw in light of the parties' settlement. *Id.* ¶ 24.

Service awards acknowledge plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny,[3] and that in doing so, plaintiffs assume the risk of "retaliation from current or future employers." *Hebert*, 2019 U.S. Dist. LEXIS 243405, at *10. "A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 16 Civ. 516, 2019 U.S. Dist. LEXIS 204371, at *21 (S.D. Ohio Nov. 25, 2019). In FLSA cases, service awards are justified by "the services [named plaintiffs] provide and the risks they incurred during the course of the [ligiation]." *Neal v. Hallsons of Leb., Inc.*, No. 20 Civ. 00672, 2022 U.S. Dist. LEXIS 42664, at *7-8 (S.D. Ohio Mar. 2, 2022) (approving $5,000 award in wage and hour case and noting it is "on the low end of the scale for nearly identical cases"). Here, Plaintiffs took a chance that they would be barred from employment in the retail industry for the sake of the collective. McNerney Decl. ¶ 34.

The $3,000 service awards requested also are well within the range awarded by courts in similar matters and should be approved as part of the settlement. *See, e.g.*, *Smith v. Local Cantina, LLC*, No. 20 Civ. 03064, 2022 U.S. Dist. LEXIS 73598, at *20-21 (S.D. Ohio Apr. 19,

---

[3]     *See generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

2022) (approving $10,000 service award and collecting cases); *Hebert*, 2019 U.S. Dist. LEXIS 243405, at *10 (same); *Brandenberg*, 2019 U.S. Dist. LEXIS 204371, at *21 (same).

For these reasons, the service awards should be approved.

## IV. An Award of Attorneys' Fees and Costs Is Appropriate.

Plaintiffs' Counsel is also entitled to recover their fees and costs expended in litigating this FLSA collective action. Where relatively small claims can only be realistically prosecuted through aggregate litigation, and the law relies on prosecution by "private attorney[s] general," attorneys who fill that role must be adequately compensated for their efforts. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("[A]n award of attorney fees [in FLSA cases] 'encourage[s] the vindication of congressionally identified policies and rights.'" (quoting *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 503 (6th Cir. 1984))). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Daoust v. Maru Rest., LLC*, No. 17 Civ. 13879, 2019 Lexis 111222, at *5 (E.D. Mich. July 3, 2019).

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees under § 216(b) is mandatory if plaintiffs prevail. *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014).

Because Plaintiffs' Counsel's efforts have rendered a significant benefit to Collective Members, Plaintiffs' Counsel requests that the Court grant their request of $205,000.00 in attorneys' fees and costs, as provided in paragraph 1.2 of the Settlement Agreement.

### 1.     Plaintiffs' Request for Attorneys' Fees Is Reasonable.

Here, Plaintiffs' fee request is reasonable and should be approved, for at least three interrelated reasons.

*First*, the attorneys' fees requested here were negotiated *after* reaching agreement on the substantive terms of the monetary payment amount, McNerney Decl. ¶ 39, and thus they are entitled to a "presumption of reasonableness." *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, No. 08 WP 65000, 2016 U.S. Dist. LEXIS 13046, at *3 (N.D. Ohio Sept. 23, 2016) ("no indicia . . . of fraud or collusion" where attorneys' fees were separately negotiated); *Gascho v. Glob. Fitness Holdings, LLC*, No. 11 Civ. 436, 2014 U.S. Dist. LEXIS 46846, at *7 (S.D. Ohio Apr. 4, 2014) ("[S]eparate negotiations suggest a lower risk of collusion where, as here, relief to the class is fair, reasonable, and adequate."), *report and recommendation adopted*, No. 11 Civ. 436, 2014 U.S. Dist. LEXIS 96695 (S.D. Ohio July 16, 2014).  "[C]ourts are especially amenable to awarding negotiated attorneys['] fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class." *Bailey v. AK Steel Corp.*, No. 06 Civ. 468, 2008 U.S. Dist. LEXIS 18838, at *4 (S.D. Ohio Feb. 28, 2008) (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-23 (W.D. Tex. 2007)).

*Second*, Plaintiffs' counsel have achieved a high level of success.  Plaintiffs prevailed on their motion for collective action notification pursuant to 29 U.S.C. § 216(b), as to the Ohio collective, and obtained a substantial settlement that will provide meaningful recovery to all impacted Ohio SMs.  *See supra*, § I.  By comparison, the Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley*, 19 F.3d at 1135 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, at *2 (6th Cir.1985)); *see also*

*West v. Emeritus Corp.*, No. 15 Civ. 437, 2017 U.S. Dist. LEXIS 104269, at *6 (finding attorneys' fee and cost award that exceeded plaintiff's recovery was "not unreasonable," especially "considering the relative lack of correlation between plaintiffs' recoveries and attorney's fees in FLSA cases" (citing *Fegley*, 19 F. 3d at 1135)). Here, Plaintiffs have recovered much more.

*Third*, in FLSA cases, there is a strong presumption that lodestar, which is calculated by multiplying reasonable hourly rates by the number of hours reasonably expended on the litigation, is reasonable. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).

Here, Plaintiffs' counsel seek $205,000 in fees, which is approximately 65% of their actual lodestar of more than $313,700, which was incurred in litigating and settling this matter.[4] McNerney Decl. ¶ 41, *id.* Ex. 2; Jones Decl. ¶ 10; Legando Decl. ¶ 6; *see also* Settlement Agreement ¶ 1.2; *Williams v. Bevill*, No. 14 Civ. 82, 2016 U.S. Dist. LEXIS 25002, at *7-8 (E.D. Tenn. Feb. 8, 2016) (finding counsel's reduction in fees, when compared with lodestar, weighed in favor of approval), *report and recommendation adopted*, No. 14 Civ. 82, 2016 U.S. Dist. LEXIS 24346 (E.D. Tenn. Feb. 29, 2016). All told, Plaintiffs' counsel have spent more than 585 hours prosecuting this case on behalf of Plaintiffs. McNerney Decl. ¶ 40; Jones Decl. ¶ 10; Legando Decl. ¶ 6.

Counsel will also spend significant additional time monitoring the claims administration and settlement fund distribution process. McNerney Decl. ¶ 41. But counsel's lodestar figure

---

[4] These figures are current through October 28, 2022. *Id.* ¶ 40. Counsel's rates have been approved by various district courts and in courts in this Circuit. *Id.*

does not account for this additional time, which renders the fee request "even more reasonable." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013).

*Finally*, Plaintiffs' counsel's extensive experience litigating multi-plaintiff wage-and-hour actions and their efficient litigation and settlement of this case further support the reasonableness of the requested fee award. McNerney Decl. ¶¶ 4-8; Jones Decl. ¶ 9; Legando Decl. ¶ 1. Plaintiffs' counsel's efforts to date have been without compensation, and any payment has been contingent upon achieving a good result, as they did here. McNerney Decl. ¶¶ 40; see *Osman v. Grube, Inc.*, No. 16 Civ. 802, 2018 U.S. Dist. LEXIS 78222, at *12 (N.D. Oh. May 4, 2018) (fees reasonable where "Plaintiffs' Counsel took the case on a contingency basis").

### 2. Plaintiffs' Counsel Are Entitled to Reimbursement of Costs.

While Plaintiffs' Counsel are not separately seeking costs in addition to the $205,000.00 award, Plaintiffs' counsel have also incurred $6,843 in out-of-pocket expenses. McNerney Decl. ¶ 45; Jones Decl. ¶ 11; Legando Decl. ¶ 7. The award sought is also intended to compensate Plaintiffs' Counsel for those expenses, which further supports the reasonableness of the award when costs are considered in addition to Plaintiffs' Counsel's lodestar. These actual expenses were necessary to the representation of Plaintiffs, and include court fees, mediation fees, postage fees, photocopies, and electronic research. McNerney Decl. ¶ 45. *See also Northcross v. Bd. of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979) (explaining award of "reasonable attorneys' fee" includes authority to award reasonable out-of-pocket expenses); *Renfro v. Ind. Mich. Power Co.*, No. 99 Civ. 877, 2007 U.S. Dist. LEXIS 15773, at *3 (W.D. Mich. Mar. 6, 2007) ("Where attorneys' fees are expressly authorized by statute, . . . the court . . . is authorized to include litigation expenses as part of a reasonable attorneys' fee."), *overruled on other grounds*, 497 F.3d 573 (6th Cir. 2007).

**V.**     <u>**The Settlement Administrator Should be Approved**</u>

The parties have selected Rust Consulting, Inc. as the Settlement Administrator.  Ag. ¶ 1.23.  McNerney Decl. ¶ 46.  The Settlement Administrator's fees are estimated to be no greater than $12,500 which will be paid by Amtel, separate and apart from the Gross Settlement Amount.  *Id*.; Ag. ¶¶ 3.1(A), 3.2.  These Settlement Administrator fees are reasonable, given the work necessary to administer the Settlement.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order approving: (1) the settlement set forth in the Agreement and incorporating its terms; (2) the proposed Settlement Notice and directing its distribution; (3) the Service Award to the Service Award Plaintiffs; (4) Plaintiffs' request for attorneys' fees and reimbursement of costs and expenses; and (5) the Settlement Administrator.

Dated:         October 31, 2022
                New York, NY                Respectfully submitted,

                                       By: */s/  Drew Legando*
                                         Drew Legando (Bar No. 84209)
                                         Trial Attorney
                                         **MERRIMAN LEGANDO WILLIAMS & KLANG, LLC**
                                         1360 W. 9th Street, Suite 200 Cleveland, OH 44113
                                         Telephone: (216) 522-9000
                                         Facsimile: 216-522-9007
                                         E-mail: drew@merrimanlegal.com

                                         Justin M. Swartz
                                         Christopher M. McNerney
                                         Rebecca Pattiz
                                         **OUTTEN & GOLDEN LLP**
                                         685 Third Avenue, 25th Floor
                                         New York, New York 10017
                                         Telephone: (212) 245-1000
                                         Facsimile: (212) 977-4005

Gregg Shavitz
Camar Jones
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
E-mail: gshavitz@shavitzlaw.com
E-mail: cjones@shavitzlaw.com

*Attorneys for Plaintiffs and the Putative*
*Settlement Collective*