**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL HAFLEY and** | : | |
| **CHRISTOPHER MCCAW, on behalf** | : | |
| **of themselves and all others** | : | |
| **similarly situated,** | : | |
| | : | **Case No. 1:21-cv-00203** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | |
| **AMTEL, LLC,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**OPINION & ORDER**

This matter is before this Court on Plaintiffs' Unopposed Motion for Final Approval of Settlement (ECF No. 54). In response to Plaintiffs' motion for settlement approval (ECF No. 45), this Court requested some revisions to the notice documents and granted preliminary approval of the settlement, clarifying that this Court was only considering this motion as to *preliminary* approval, not final approval. (ECF No. 50). Plaintiffs made satisfactory revisions to the notice documents. (*See* ECF Nos. 51-2, 51-3, 51-4, 51-5, 51-6, 52). Having completed the notice and opt-in process, Plaintiffs now move for final approval of the settlement. For the reasons set forth below, Plaintiffs' motion (ECF No. 54) is **GRANTED**.

## I. BACKGROUND

This is an action for unpaid wages pursuant to both federal and Ohio and Kentucky state law brought by named plaintiffs Michael Hafley and Christopher McCaw against their former employer, Amtel, LLC ("Amtel"). (ECF No. 1 at 1–2). Amtel is a large retailer of mobile devices. (*Id*. at 4). Plaintiffs formerly were employed as store managers for Amtel. (*Id*.). In Plaintiffs' view, Amtel failed to keep accurate time for store managers, misclassified store managers as exempt

employees, and failed to pay overtime compensation to store managers. (*Id*. at 5–6).

Plaintiffs therefore sued Amtel on behalf of themselves and similarly situated current and former store managers who elected to opt in. (*Id.* at 5). Plaintiffs then moved this Court for conditional collective action certification under the FLSA and for approval of a notice to be sent to similarly situated employees.[1] (ECF Nos. 16). In so granting, this Court conditionally certified the following collective:

> All individuals employed by Amtel as exempt-classified employees at stores in Ohio in the job title of Store Manager at any time from April 29, 2018 to the present who did not receive overtime compensation for all hours worked over 40 in a workweek.

(ECF No. 34 at 24). This Court subsequently approved Plaintiffs' proposed notice and consent to join form. (ECF No. 38).

Before Plaintiffs mailed the collective notice, the parties agreed to engage in settlement negotiations and to attempt mediation. (ECF No. 39). The parties began their settlement efforts with a mediation on June 14, 2022, and the parties eventually reached an agreement with the continued assistance of a mediator on August 11, 2022. (ECF No. 46 at 3). Plaintiffs subsequently moved for approval of the settlement agreement, service awards, and attorneys' fees and costs, (ECF No. 45), which this Court preliminarily approved after some minor revisions to the notice documents, (ECF Nos. 50, 52). Following their submission of the collective members' consents to join the settlement, Plaintiffs moved for unopposed final approval of the settlement, service awards, and attorneys' fees. (ECF Nos. 53, 54).

The Settlement Agreement provides for monetary relief to the 27 out of 40 potential collective members who consented to join the collective action. (ECF No. 54-1 at 1). Under the Agreement, Amtel's $275,000 payment will resolve these individuals' claims, as well as

---

[1] Plaintiffs originally also brought suit as a class action under Fed. R. Civ. P. Rule 23, but did not actually seek Rule 23 class certification. (ECF No. 1 at 2).

compensate the more involved Plaintiffs for their time, and compensate Plaintiffs' counsel via attorneys' fees and related costs and expenses. (*Id*. at 1–2). These 27 individuals will receive her or his pro rata share of the settlement based "a proportionate share of the [$275,000] pursuant to an allocation formula based on the number of weeks they worked during the Relevant Period." (*Id.* at 7 (citing McNerney Decl. ¶ 10)). Under this formula, individuals will receive, on average, $1,375 each. (*Id.* at 8 (citing Rust Decl. ¶ 18)).

The named Plaintiffs, along with opt-in Plaintiffs Anthony Fambry, Alexander Hausfeld, and Sandeep Jaspal (collectively, the "Service Award Plaintiffs"), request an additional $3,000 each as a service payment for "assist[ing] in the investigation and litigation of the lawsuit and in the preparation for and outcome of the mediation that led to this resolution." (*Id*. at 9). Plaintiffs' counsel, for their part, request $205,000 in attorneys' fees, costs, and expenses. (*Id*. at 9–10). In response to this Court's request for more detailed attorneys' fee calculations, (ECF No. 50 at 12–13), Plaintiffs included a tally of hours and litigation expenses through that time, (ECF No. 54-1 at 9–10 (directing this Court to Ex. 2)). The $275,000 pot does not include settlement administration fees, which Amtel will pay separately directly to the settlement administrator. (*Id.* at 7).

This settlement administrator, Rust Consulting, Inc., prepared and mailed Class Notices consistent with this Court's approved notice process. (*Id.* at 6, 8–9). While some individuals were inadvertently left off the original mailing list, they were notified via this same procedure a few weeks later. (*Id.* at 8). Should this Court grant final approval, Rust will send checks to the 27 consenting collective members within 21 days. (*Id.* at 9).

This Court held a fairness hearing to discuss the settlement as a whole, the service awards, and attorney's fees, (ECF No. 58), so this matter is now ripe for review.

## II.  LAW & ANALYSIS

This Court shall approve an FLSA settlement if: (1) there exists a bona fide dispute that can be resolved by a settlement agreement; (2) the agreement was reached through an arms-length negotiation; and (3) the agreement is fair, reasonable, and adequate. *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381–82 (S.D. Ohio 2006)). When determining whether a class action settlement is fair, reasonable, and adequate, courts consider: (1) the nature of the negotiations; (2) the complexity, expense and likely duration of the litigation; (3) the adequacy of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (internal citations omitted) (quoting Fed. R. Civ. P. 23(e)(2)); *see, e.g.*, *Borders v. Alternate Sol. Health Network, LLC*, No. 2:20-cv-01273, 2021 WL 4868512, at *2 (S.D. Ohio May 17, 2021). Given that this is a FLSA collective action, however, the sixth factor does not apply. *See Headspeth v. TPUSA, Inc.*, No. 2:19-cv-2062, 2022 WL 4094448, at *1 (S.D. Ohio Sept. 7, 2022).

### A.  Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties have not manipulated the settlement process such that the employer can get around its FLSA wage and overtime obligations. *Kritzer*, 2012 WL 1945144, at *5. So, this Court asks if there is "[t]he existence of a question as to the plaintiffs' entitlement to compensation under the FLSA[.]" *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). At the heart of this case is whether Plaintiffs are entitled to compensation for the time they worked at Amtel. Plaintiffs maintain that Amtel failed to pay them

for the overtime that they worked, while Amtel disputes any liability. These divergent views therefore reveal a bona fide dispute.

### B. Fairness, Reasonableness, and Adequacy of Settlement

So long as a settlement agreement reached through arms-length negotiation is fair, reasonable, and adequate, the court may properly approve the agreement. *Krizer*, 2012 WL 1945144, at *6. Here, this Court once again finds that the balance of factors weighs in favor of approving the Settlement Agreement. In so doing, this Court incorporates all of its approvals from its preliminary approval order, (*see* ECF No. 50), and reiterates the important parts below.

#### 1. Risk of Collusion

The Court finds that the negotiations were conducted at arm's length and there is no reason to suspect that the settlement involves collusion. As an initial point, this Court "begins from a presumption that there was no fraud or collusion, absent evidence to the contrary." *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-CV-00411, 2023 WL 3204684, at *6 (S.D. Ohio May 2, 2023). Here, in lieu of discovery, the parties informally exchanged information and their respective positions on the issues. (ECF No. 54-1 at 5). While the parties did not reach a resolution in the June 14, 2022 mediation session, the parties continued to negotiate and reached an agreement over the following weeks with the continued assistance of the mediator. (*Id.*). Given the duration of the case and active participation from the parties and an independent mediator, this Court is thus satisfied that the Settlement Agreement is the result of an extensive, arms-length negotiation process. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.").

### 2.    *Complexity, Expense, and Likely Duration of Litigation*

Given the risks Plaintiffs face at trial, resolution via settlement is favorable. Nothing new has come up to alter this Court's view of this preferable resolution, and settlement mitigated the need to resolve substantive legal questions regarding potential mandatory arbitration, and regarding whether Plaintiffs would be able to maintain a collective through trial. (ECF No. 54-1 at 13). This factor therefore weighs in favor of approval.

### 3.    *Stage of Proceedings*

This Court gives great weight to the judgment of experienced counsel. *Borders*, 2021 WL 4868512, at *3. Here, while the parties have not engaged in "formal discovery," this Court nonetheless finds this factor satisfied as the Plaintiffs received adequate information to inform liability and damages and evaluate the settlement.

### 4.    *Likelihood of Success on the Merits*

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Kritzer*, 2012 WL 1945144, at *6. The lower the likelihood of success, the more desirable a settlement. *Id.* As Plaintiffs admit, they face a risk as to issues of both liability and damages should this case proceed to trial. (ECF No. 54-1 at 14). Plaintiffs would experience hurdles on both of these issues given the factual complexities, such as the lack of contemporaneous time records, and potentially undistinguishable case law. As such, this Court is not certain that Plaintiffs would prevail, so this factor counsels in favor of settlement.

### 5.    *Judgment of Experienced Counsel*

For the same reasons as its prior Order, this Court finds Plaintiffs' experienced counsel's belief that the settlement is fair, reasonable, and adequate to be persuasive.

### 6.    *Public Interest*

The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio Jan. 18, 2019). This settlement does all three.

\* \* \*

Based on the above analysis and the lack of changes since this Court's prior findings in its preliminary approval, this Court finds the Settlement Agreement is: (1) arising out a bona fide dispute; (2) the result of arms-length negotiations; and (3) fair, reasonable, and adequate. As such, this Court moves onto the monetary aspects of the Settlement Agreement.

## C.  Service Awards

Service awards are "efficacious ways of encouraging member [sic] of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hogan v. Cleveland Ave Rests. Inc.*, No. 2:15-CV-2883, 2019 WL 6715976, at *6 (S.D. Ohio Dec. 10, 2019) (quoting *Osman v. Grube, Inc.*, 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018)). As the involvement of all five suggested recipients[2] of service awards provided substantial and integral assistance to the litigation, and as the award of $3,000 is within this Court's range of approved awards, these awards are proper.

## D.  Attorneys' Fees

As this Court explained and the parties understand, there are two methods for determining whether proposed attorney's fees are appropriate: the lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). A district court has discretion to select which method is appropriate given the "unique characteristics of class

---

[2] This Court acknowledges Plaintiffs' clarification of their understanding of this Court's revised class definition, and notes that it does not impact this Court's analysis. (*See* ECF No. 57).

actions in general, and of the unique circumstances of the actual cases before them." *Rotuna v. W. Customer Mgt. Grp., LLC*, 4:09-cv-1608, 2010 WL 2490989, at \*8 (N.D. Ohio June 15, 2010).

Plaintiffs clarified at oral argument that the attorneys' fees amount and the individual settlement awards were negotiated as separate amounts, such that the amount of attorneys' fees awarded out of the agreed-upon $275,000 pot does not impact the awards that Plaintiffs will receive. (*See* ECF No. 54-1 at 18 (citing cases)). Indeed, this Court understands that any leftover funds would revert to Amtel, not increase the amount paid to any plaintiff. And while the individual settlement awards are fair and reasonable to compensate Plaintiffs, the "percentage-of-the-fund" model as applied to the settlement awards—which this Court usually limits at one-third—would not adequately compensate Plaintiffs' counsel for their representation. *Rotuna*, 2010 WL 2490989, at \*8. Instead, the calculated lodestar amount of $205,000 is more appropriate. (*See* ECF No. 54-1 at 20). As of the time of Plaintiffs' briefing, this amount is approximately 47% of their actual lodestar and is based on counsels' contemporaneously logged representation. (*Id.* at 21). As the rates used to calculate the attorneys' fees are reasonable and counsel provided adequate detail justifying these amounts, the attorneys' fee award is overall reasonable.

### III. CONCLUSION

For the reasons set forth above, this Court **GRANTS** the Unopposed Motion for Final Approval of Settlement (ECF No. 54).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: May 21, 2024**